IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DONNIE DAVIS,

          Plaintiff,

     v.

CAROLYN W. COLVIN,
Commissioner, Social Security
Administration,

          Defendant.

CIVIL ACTION FILE

NO. 1:15-CV-0366-JFK

## FINAL OPINION AND ORDER

Plaintiff in the above-styled case brings this action pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of the Social Security Administration which denied his disability applications. For the reasons set forth below, the court **ORDERS** that the Commissioner's decision be **REVERSED** and that the case be **REMANDED** for further proceedings.

## I.    Procedural History

Plaintiff Donnie Davis filed an application for disability insurance benefits in July 2011 and an application for supplemental security income in August 2011,

alleging that he became disabled on June 10, 2009. [Record ("R.") at 23, 131, 133]. Plaintiff later amended his alleged disability onset date to December 13, 2011. [R. at 23, 48]. After Plaintiff's applications were denied initially and on reconsideration, an administrative hearing was held on March 14, 2013. [R. at 23, 37-72]. The Administrative Law Judge ("ALJ") issued a decision denying Plaintiff's applications on May 25, 2013, and the Appeals Council denied Plaintiff's request for review on September 10, 2014. [R. at 7-11, 23-31]. Plaintiff filed his complaint in this court on February 9, 2015, seeking judicial review of the final decision of the Commissioner. [Doc. 3]. The parties have consented to proceed before the undersigned Magistrate Judge.

## II.    Facts

The ALJ found that Plaintiff has depression; polysubstance dependence; human immunodeficiency virus ("HIV") infection; hypertension; stage III chronic kidney disease; and degenerative disc disease of the lumbar spine with radiating pain to the knees. [R. at 25]. Although these impairments are "severe" within the meaning of the Social Security regulations, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. at 25-26].

2

The ALJ found that Plaintiff is unable to perform any of his past relevant work. [R. at 29]. However, the ALJ found that there are other jobs that exist in significant numbers in the national economy that he can perform. [R. at 30]. As a result, the ALJ concluded that Plaintiff has not been under a disability from June 10, 2009, the alleged disability onset date, through the date of the ALJ's decision. [R. at 31].

The decision of the ALJ [R. at 23-31] states the relevant facts of this case as modified herein as follows:

The claimant testified that he is unable to work due to fatigue, pain, and psychological symptoms. He stated that he last worked in 2010 before a layoff. He stated that he would not be physically or mentally able to return to work because of the combination of his impairments. He testified that he has kidney disease, lower back pain, depression, HIV disease, and knee pain.

The claimant stated that he has pain in his back and knees frequently and that his fatigue has worsened over the last few months. He testified that he also experiences nightmares, night sweats, headaches, and weight fluctuations. He stated that he has concentration problems, an inability to sleep, and difficulty walking. The claimant testified that on a typical day he rests and lies down up to five hours during the day. He stated that he is able to place dishes in the dishwasher but that he does not

3

AO 72A
(Rev.8/82)

use the stairs due to shortness of breath.  He stated that the back pain radiates down his right leg and that he uses Tylenol and heating pads.  The claimant testified that he might drink a beer but that he does not abuse alcohol because of his medications.  He reported that he is fatigued for most of the day, that he is in pain all day, and that he feels suicidal at times.  The claimant stated that he reads or watches television and tries to stay off his knees.  He reported that he no longer performs any hobbies.  The claimant testified that his fiancé does most of the cooking and that he assists her with grocery shopping.  He testified that he is in pain if he stands for longer than one hour and that he lies down for four or five hours during the day because he sleeps poorly at night.

Radiologic imaging of the abdomen revealed normal left kidney size, asymmetric moderate atrophy of the right kidney, no hydronephrosis, no evidence of renal tumor, and no cystic, solid, or enhancing renal lesions.  (Exhibit 17F at 4-5).  An x-ray of the lumbar spine revealed facet arthropathy with preserved disc spaces and sclerosis adjacent to the sacroiliac joint with no significant soft tissue abnormalities. (Exhibit 17F at 6). From March 2011 to February 2013, treatment records from Grady Health System and St. Joseph Mercy Care Services document complaints of ongoing back and knee pain but no complaints of chronic fever, fatigue, shortness of breath,

AO 72A

(Rev.8/82)

chest pain, night sweats, rash, weakness, or headaches.  (Exhibit 2F at 10; Exhibit 5F at 16; Exhibit 17F at 28).  The claimant reported worsening tiredness in April 2012 but treatment notes from Grady in February 2013 indicate, "Overall doing well."  (Exhibit 12F at 6; Exhibit 17F at 32).  With respect to his HIV status, laboratory testing shows that the claimant adheres to highly active anti-retroviral therapy ("HAART") such that his CD4 and CD3 are within the normal range.  (Exhibit 2F; Exhibit 5F; Exhibit 12F at 6-26; Exhibit 15F).

On December 13, 2011, Dr. Khalid Bashir authored a fatigue questionnaire in which he indicated that the claimant must rest for a minimum of two hours during the day due to HIV, chronic kidney disease, and medication related fatigue.  (Exhibit 7F).  However, Dr. Bashir also noted that the claimant's fatigue is only mild to moderate in severity such that he would not be able to perform his past job as a construction worker.

With regard to psychological impairments, a consultative psychological evaluation dated February 21, 2012, indicates that the claimant reported experiencing auditory and visual hallucinations with depression, insomnia, low energy, and difficulty concentrating.  (Exhibit 9F).  He also reported to Dr. Debra Lewis that he did not participate in mental health treatment.  (Exhibit 9F at 3).  Dr. Lewis noted that the

5

claimant displayed a normal range affect with normal energy level and processing speed. (Exhibit 9F at 4). Dr. Lewis further noted that his thoughts were organized, logical, and relevant to the situation. Although the claimant presented with some memory and attention problems, his fund of information was adequate. Dr. Lewis diagnosed the claimant with depressive disorder and polysubstance abuse by history. Dr. Lewis cited the claimant's self-report of symptoms in the absence of supporting evidence and opined that he would not be able to consistently and reliably understand, remember, and follow simple instructions. (Exhibit 9F at 5).

There is no evidence of end organ damage due to HIV or chronic kidney disease. Although the claimant complains of knee problems and difficulty ambulating, the record reflects that imaging of the knees is normal. (Exhibit 17F). There are no records documenting psychiatric hospitalizations or emergency intervention for suicide attempt or psychotic episodes. Further, no treating provider has indicated that the claimant is disabled or otherwise unable to sustain employment due to mental impairment. Non-examining State agency medical and psychological consultants issued opinions that the claimant is capable of light work activity with no substantial mental limitations. (Exhibit 4F; Exhibit 8F; Exhibit 10F; Exhibit 11F).

6

The record shows that the claimant sought mental health counseling at Positive Impact, Inc., sporadically between June 2012 and January 2013.  (Exhibit 14F at 16). The progress notes indicate depressive symptoms related to relationship, family, and financial stressors but no significant psychological disturbances requiring therapeutic intervention or psychotropic medical management.  Mental health counselor Antoine Crosby of Positive Impact completed a questionnaire and opined that the claimant has marked impairment in the ability to: maintain attention and concentration; respond appropriately to supervision; and perform repetitive and varied tasks.  (Exhibit 13F).

Additional facts will be set forth as necessary during discussion of Plaintiff's arguments.

III.   **Standard of Review**

An individual is considered to be disabled if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).   The impairment or impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques and must be of such severity

7

that the claimant is not only unable to do his previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  See 42 U.S.C. §§ 423(d)(2) and (3).

"We review the Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards." Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."   Id. at 1440.   "Even if the evidence preponderates against the [Commissioner's] factual findings, we must affirm if the decision reached is supported by substantial evidence." Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). "'We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].'" Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983)).

"The burden is primarily on the claimant to prove that he is disabled, and therefore entitled to receive Social Security disability benefits." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing 20 C.F.R. § 404.1512(a)).   Under the regulations as promulgated by the Commissioner, a five step sequential procedure is followed in order to determine whether a claimant has met the burden of proving his

disability.  See Doughty, 245 F.3d at 1278; 20 C.F.R. §§ 404.1520, 416.920.  At step one, the claimant must prove that he has not engaged in substantial gainful activity.  See id.  The claimant must establish at step two that he is suffering from a severe impairment or combination of impairments.  See id.  At step three, the Commissioner will determine if the claimant has shown that his impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  See Doughty, 245 F.3d at 1278; 20 C.F.R. §§ 404.1520, 416.920.  If the claimant is able to make this showing, he will be considered disabled without consideration of age, education, and work experience.  See id.  "If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work."  Doughty, 245 F.3d at 1278.  "At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work."  Id.  If, at any step in the sequence, a claimant can be found disabled or not disabled, the sequential evaluation ceases and further inquiry ends.  See 20 C.F.R. §§ 404.1520(a), 416.920(a).

AO 72A

(Rev.8/82)

## IV.   Findings of the ALJ

The ALJ made the following findings of fact and conclusions of law:

1.   The claimant meets the insured status requirements of the Social Security Act through September 30, 2010.

2.   The claimant has not engaged in substantial gainful activity since December 13, 2011, the alleged onset date.  (20 C.F.R. §§ 404.1571, *et seq.*, and 416.971, *et seq.*).

3.   The claimant has the following severe impairments: depression, polysubstance dependence, HIV infection, hypertension, stage III chronic kidney disease, and degenerative disc disease of the lumbar spine with radiating pain to the knees. (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

4.   The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

5.   The claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except that he must exercise a sit/stand option and need not stand or sit for more than one hour at a time without making adjustments; no more than occasional climbing, balancing, stooping, kneeling, crouching, and crawling; precluded from any climbing with respect to ladders, ropes, and scaffolds; capable of understanding and carrying out simple instructions, completing a routine work schedule, and capable of interacting with others to include coworkers, the public, and supervisors; able to complete basic work tasks without undue interruption from psychologically based symptoms; and adapt to changes in a work setting.

6.   The claimant is unable to perform any past relevant work.  (20 C.F.R. §§ 404.1565 and 416.965).

10

7.   The claimant was born on February 22, 1962, and was 47 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age. (20 C.F.R. §§ 404.1563 and 416.963).

8.   The claimant has a limited education and is able to communicate in English. (20 C.F.R. §§ 404.1564 and 416.964).

9.   Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. (See Social Security Ruling ("SSR") 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.  The claimant has not been under a disability, as defined in the Social Security Act, from June 10, 2009, through the date of the ALJ's decision. (20 C.F.R. §§ 404.1520(g) and 416.920(g)).

[R. at 25-31].

## V.   Discussion

Plaintiff Donnie Davis argues that the ALJ's decision denying his disability applications should be reversed. [Doc. 10]. According to Plaintiff, the ALJ erred because he posed an incomplete hypothetical to the vocational expert and failed to evaluate all of Plaintiff's impairments. [Id. at 8-11]. Plaintiff also contends that the

11

ALJ did not have good cause for rejecting the opinion of treating physician Dr. Khalid Bashir.  [Id. at 12-16].  In addition, Plaintiff argues that the ALJ improperly rejected the opinions of treating and examining mental health professionals.  [Id. at 17-21].  Plaintiff's final argument will be addressed first.

The State agency sent Plaintiff to psychologist Dr. Debra Lewis for a consultative psychological examination, which took place on February 21, 2012.  [R. at 377-81].  Dr. Lewis diagnosed Plaintiff with depressive disorder NOS, alcohol abuse, and a history of cocaine and marijuana abuse.  [R. at 380].  Dr. Lewis found, *inter alia,* that Plaintiff's "memory, attention and concentration are somewhat limited but would likely be adequate for meeting elementary production norms."  However, Dr. Lewis also found that Plaintiff "would not be able to consistently and reliably understand, remember and follow simple instructions."  [R. at 381].  If Dr. Lewis' opinion had been credited, Plaintiff would have been found disabled because "[w]ork-related mental activities generally required by competitive, remunerative work include the abilit[y] to: understand, carry out, and remember instructions. . . ."  SSR 96-8p; accord SSR 85-15.  In June 2012, a few months after Dr. Lewis' evaluation, Plaintiff began receiving mental health treatment on a regular basis from Licensed Professional Counselor ("LPC") Antoine Crosby.  [R. at 427-34, 452-53].  Mr. Crosby

12

completed a residual functional capacity ("RFC") questionnaire in August 2012 and opined that Plaintiff is moderately limited in numerous areas and that he has "marked" limitations in: maintaining attention/concentration; responding appropriately to supervision; performing complex tasks; performing repetitive tasks; and performing varied tasks. [R. at 427-28]. Plaintiff would have been found disabled if LPC Crosby's opinion had been credited.

The ALJ rejected the opinions of both Dr. Lewis and Mr. Crosby. [R. at 28-29]. The court finds that the ALJ's rejection of these opinions was erroneous. The ALJ stated that one of the reasons he gave "very limited weight" to Dr. Lewis' opinion was that the psychologist "failed to provide objective findings from diagnostic testing techniques to support her opinion." [R. at 28]. However, as Plaintiff notes, the agency did not pay for Dr. Lewis to conduct any psychological testing. [Doc. 10 at 18-19; R. at 377-81]. The agency only ordered a clinical interview and mental status exam from Dr. Lewis. [R. at 377-81]. In other words, the ALJ rejected Dr. Lewis' findings in the interview and status exam (both of which were ordered by the agency) because the psychologist failed to cite to supporting objective findings from diagnostic testing, but no such testing was ordered by the agency. [R. at 28, 377-78]. The undersigned agrees with Plaintiff when he argues that because the Social Security Administration

13

is responsible for any absence of testing, it "should not be allowed to use its own decision to overcome the evidence produced." [Doc. 10 at 19]. The ALJ's rejection of Dr. Lewis' opinion based on a lack of testing was the result of a failure to apply proper legal standards and a reasonable person would not accept this evidence as adequate to support this aspect of the ALJ's decision.

The ALJ also wrote that he discounted Dr. Lewis' opinion because the psychologist allegedly "relie[d] on much, if not all, of what the claimant reported." [R. at 28]. This explanation falls short. The relevant regulations recognize that "[i]ndividuals with mental impairments can often provide accurate descriptions of their limitations. The presence of a mental impairment does not automatically rule [a claimant] out as a reliable source of information about [his] own functional limitations." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00(D)(1)(b). Furthermore, Dr. Lewis did not just conduct an interview with Plaintiff. She performed a mental status examination and arrived at her conclusion that Plaintiff could not consistently and reliably understand, remember, and follow simple instructions based on her interpretive judgment as a psychologist. [R. at 378-81]. As one court has explained, "Clinical psychologists deal with quintessentially subjective information with respect to which they must exercise professional, interpretive

judgment." Matthews v. Barnhart, 347 F. Supp. 2d 1093, 1101 (M.D. Ala. 2003). The ALJ's decision to give limited weight to Dr. Lewis' opinion based on the psychologist's alleged over-reliance on Plaintiff's self-reports was erroneous.

The ALJ found that Dr. Lewis' "opinion contradicts the findings of the mental status examination that indicates [Plaintiff] functions within normal limits with some memory problems." [R. at 28]. The psychologist examined Plaintiff and found that he would not be able to deal with simple instructions in the workplace. [R. at 28, 381]. Dr. Lewis made this finding based on Plaintiff's problems with memory and attention and the fact that he "was not able to understand the instructions to complete Serial 4 additions or Serial 7 subtractions." [R. at 380-81]. "While the ALJ is entitled to make credibility determinations, the ALJ may not substitute his judgment for the judgments of experts in their field of expertise." Matthews, 347 F. Supp. 2d at 1101. In the present case, the undersigned finds that the ALJ erroneously substituted his opinion for that of an examining psychologist.

There is no opinion from either a treating or examining medical source which contradicts Dr. Lewis' opinion.  The only other examining source who offered an opinion about Plaintiff's mental limitations was LPC Crosby. The opinion from Mr. Crosby was consistent with the opinion of Dr. Lewis in that it supports Plaintiff's

15

claim for disability.  The record reveals that LPC Crosby treated Plaintiff from June 2012 thru at least January 2013.  [R. at 427-34, 452-53].  As noted *supra*, Mr. Crosby completed an RFC questionnaire in August 2012 and opined that Plaintiff has numerous moderate limitations and that he has  "marked" limitations in: maintaining attention/concentration; responding appropriately to supervision; performing complex tasks; performing repetitive tasks; and performing varied tasks.  [R. at 427-28].  The ALJ stated that he rejected the opinion of LPC Crosby because, being neither a psychiatrist nor psychologist, he is not an "acceptable medical source."  [R. at 29].

Social Security regulations provide that only evidence from "acceptable medical sources" may be used to establish the existence of a medically determinable impairment.  See 20 C.F.R. §§ 404.1513(a) and 416.913(a); SSR 06-3p.  "However, once medical evidence from acceptable medical sources establishes the presence of a severe impairment, testimony from other medical sources may be used" to show the severity of the claimant's impairment and how it affects his ability to function.  Reliford v. Barnhart, 444 F. Supp. 2d 1182, 1188 (N.D. Ala. 2006); accord 20 C.F.R. §§ 404.1513(d), (e) and 416.913(d), (e); SSR 06-3p.  As previously noted, examining psychologist Dr. Lewis diagnosed Plaintiff with depressive disorder and the ALJ found that Plaintiff's depression was a severe impairment.  [R. at 25, 380].  Therefore, LPC

16

Crosby's opinion of the severity of Plaintiff's depression and the degree to which it causes functional limitations was relevant to Plaintiff's claim for disability. The ALJ's complete rejection of Mr. Crosby's opinion solely because he was a counselor and not an acceptable medical source was "improper and unreasonable." Reliford, 444 F. Supp. 2d at 1188.

Although the ALJ discounted the opinions of Dr. Lewis and LPC Crosby, the ALJ gave "some weight" to the opinion of a State agency psychological consultant who found no substantial mental limitations. [R. at 29, 383-99]. The consultant, however, did not examine Plaintiff, as did Dr. Lewis and LPC Crosby. The Eleventh Circuit has explained that to "attempt to evaluate disability without personal examination of the individual and without evaluation of the disability as it relates to the particular person is medical sophistry at its best." Spencer on behalf of Spencer v. Heckler, 765 F.2d 1090, 1094 (11th Cir. 1985) (citations omitted). The court also notes that the State agency consultant completed the psychiatric review technique form and mental RFC assessment in March 2012, a few months before Plaintiff began receiving mental health treatment from LPC Crosby. [R. at 383-99, 427-34, 452-53]. Thus, not only did the psychological consultant not have the benefit of personally examining Plaintiff, he did not have the benefit of Mr. Crosby's opinion and treatment

17

records which were relatively consistent with the opinion of examining psychologist Dr. Lewis. Furthermore, because the ALJ gave only "some weight" (rather than controlling or even substantial weight) to the State agency psychological consultant, it is unclear what record evidence, if any, supports the ALJ's mental RFC assessment. [R. at 29].

In summary, Dr. Lewis and LPC Crosby were the only sources who examined or treated Plaintiff and offered opinions about his mental limitations. These opinions support Plaintiff's claim for disability and are consistent with one another. The ALJ, however, rejected the opinions from Dr. Lewis and LPC Crosby and gave "some weight" to the opinion of a non-examining psychological consultant who found no substantial mental limitations and who offered his opinion before Plaintiff began receiving mental health treatment. In light of these facts, the court finds that the ALJ failed to apply the proper legal standards and that substantial evidence does not support his decision regarding Plaintiff's mental limitations. Remand is warranted on this basis.

Plaintiff Davis offers a number of other arguments in support of his contention that the ALJ's decision was erroneous. [Doc. 10]. The court, however, concludes that these arguments need not be addressed. Upon remand, the Commissioner must

18

reevaluate Plaintiff's mental limitations and the opinions from Dr. Lewis and LPC Crosby. This reevaluation could affect: the ALJ's assessment of other record evidence, including the opinion of Dr. Bashir and Plaintiff's credibility; the ALJ's findings regarding Plaintiff's functional limitations; and, if another administrative hearing is conducted, any hypothetical questions posed to a vocational expert. Accordingly, the undersigned finds it unnecessary to address Plaintiff's remaining arguments. See Demenech v. Secretary of the Dep't of Health and Human Services, 913 F.2d 882, 884 (11th Cir. 1990) (per curiam) (concluding that most of plaintiff's arguments did not need to be addressed because remand was warranted on a significant issue); Jackson v. Bowen, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam) (finding that it was unnecessary to address most of the issues raised by the plaintiff because they were likely to be reconsidered on remand); Shaffer v. Comm'r of Social Security, 2015 WL 5604768, at *2 (M.D. Fla. September 23, 2015) ("Because remand is required on the first issue in this case, it is unnecessary to review Plaintiff's second argument."); Walker v. Astrue, 2013 WL 5354213, at *19 n.22 (N.D. Ga. September 24, 2013) ("Because it is recommended that this case be remanded for further proceedings that could impact the ALJ's assessment of claimant and Shaw's credibility, her RFC, and her ability to perform other work in the national economy, the Court need not address

19

the remaining issues raised by the claimant."); Hall v. Astrue, 2012 WL 2499177, at *4 n.8 (N.D. Ala. June 22, 2012) ("Because remand is warranted on these grounds, the court need not consider claimant's other arguments.").

## VI.    Conclusion

Based on the forgoing reasons and cited authority, the court concludes that the decision of the ALJ was not supported by substantial evidence and was the result of a failure to apply the proper legal standards.  It is, therefore, **ORDERED** that the Commissioner's decision be **REVERSED** and that this action be **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings in accordance with the above discussion.  The Clerk is **DIRECTED** to enter judgment in favor of Plaintiff.

**IT IS FURTHER ORDERED** that, in the event past due benefits are awarded to Plaintiff upon remand, Plaintiff's attorney may file a motion for approval of attorney's fees under 42 U.S.C. §§ 406(b) and 1383(d)(2) no later than thirty days after the date of the Social Security letter sent to Plaintiff's counsel of record at the conclusion of the Agency's past-due benefit calculation stating the amount withheld for attorney's fees.  Defendant's response, if any, shall be filed no later than thirty days

20

after Plaintiff's attorney serves the motion on Defendant.  Plaintiff shall file any reply within ten days of service of Defendant's response.

**SO ORDERED**, this 29th day of August, 2016.


JANET F. KING
UNITED STATES MAGISTRATE JUDGE

21